AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 2-12-2020)

# UNITED STATES DISTRICT COURT

for the
Western District of Washington

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| | ) | |
| Information associated with One (1) Target | ) | Case No.  MJ20-215 |
| Accounts/Identifiers, for Investigation of | ) | |
| 21 U.S.C. § 841 and Other Offenses | ) | |

## APPLICATION FOR A SEARCH WARRANT AND PEN-TRAP ORDER

I, a federal law enforcement officer or an attorney for the government, request a search warrant and pen-trap order, and state under penalty of perjury that I have reason to believe that on the person or property described in Attachment A, located in: the Western District of Washington, there is now concealed property and evidence described in Attachment B.  This Court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

The basis for the search under Fed. R. Crip P. 41(c) is *(check one or more)*:

☒  evidence of a crime;

☐  contraband, fruits of crime, or other items illegally possessed;

☐  property designed for use, intended for use, or used in committing a crime;

☐  a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841 | Distribution of Controlled Substances |
| 21 U.S.C. § 841 & 846 | Conspiracy to Distribute Controlled Substances |

The application is based on the facts set forth in the attached affidavit, which is incorporated herein by reference with all attachments and exhibits.  Pursuant to 18 U.S.C. § 3123(a)(1), Exhibit 1 to the affidavit includes a certification from an attorney from the government that the requested information is relevant to an ongoing criminal investigation.

☒  Delayed notice of 90 days (give exact ending date if more than 30 days: July27, 2020, is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 41, this warrant is presented by:
☒ by reliable electronic means; or ☐ telephonically recorded

*Applicant's signature*

Kailund Williams, Special Agent DEA
*Printed name and title*

☐ The foregoing affidavit was sworn before me and signed in my presence, or
☒ The above-named officer provided a sworn statement attesting to the truth or the foregoing affidavit by telephone/

Date: April 28, 2020

*Judge's signature*

Brian A. Tsuchida, United States Magistrate Judge
*Printed name and title*

City and state:  Seattle, Washington

USAO 2019R00179 (TT43)

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR SEARCH WARRANTS AND PEN-TRAP ORDERS

STATE OF WASHINGTON       )
                          )          ss
COUNTY OF KING            )

I, Kailund Williams, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1.      I make this affidavit in support of an application for search warrants under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the following cellular telephone:

a.      **Target Telephone 43**, assigned call number **425-249-1423** with International Mobile Subscriber Identity (IMSI) 310150728434109.  **TT43** has a listed subscriber of "Victor Mendez" and has service provided by AT&T/Cricket Wireless, a wireless telephone service provider headquartered at AT&T Corporation, 11760 U.S. Highway 1, North Palm Beach, Florida 33408, and/or Cricket Wireless LLC, 1025 Lenox Park Boulevard Northeast, Atlanta, Georgia 30319.  **TT43** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.  **TT43** is believed to be utilized by Victor Manuel COTA MENDEZ.

2.      The wireless telephone service provider identified in Paragraph 1(a) is referred to throughout this affidavit and attachments as the "wireless provider," "the wireless service provider," or "the wireless service provider identified in Attachment A."

### ECPA

3.      The Court has jurisdiction to issue the proposed warrant under the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

Pen Register Act

4.     Because this warrant seeks the prospective collection of information that falls within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to comply with the Pen Register Act, 18 U.S.C. §§ 3121-3127.

5.     The Court has jurisdiction to issue the requested pen-trap order because it is a "court of competent jurisdiction" under 18 U.S.C. § 3122(a)(2).  Specifically, the Court is a district court of the United States that "has jurisdiction over the offense being investigated." 18 U.S.C. § 3127(2)(A)(i).

6.     This application includes all the information required by the Pen Register Act.  *See* 18 U.S.C. §§ 3122(b) & 3123(a)(1).  Namely, Exhibit 1 to this application is a certification from Assistant United States Attorney Stephen Hobbs that (1) identifies DEA as the law enforcement agency conducting the investigation and (2) certifies the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency.  18 U.S.C. § 3122(b).  The Assistant United States Attorney is an "attorney for the government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

7.     A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted."  18 U.S.C. § 3127(3).  A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication."  18 U.S.C. § 3127(4).

8.     In the traditional telephone context, pen registers captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls.  Similar principles apply to other kinds of wire and electronic communications such as emails, text messages, connection logs, and data transfers.  The

Affidavit of SA Williams - 2
USAO 2019R00179 (TT43)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

prospective location data sought in this application constitutes "dialing, routing, addressing, and signaling information" covered by the Pen Register Act. Accordingly, the requested warrants will record, decode, and/or capture dialing, routing, addressing, and signaling information associated with the Target Cell Phone without geographic limit.

9.      The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order through Attachment B of the requested warrant that the wireless service provider described in Attachment A and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of this warrant furnish, upon service of the warrant, information, facilities, and technical assistance necessary to install the pen/trap, including installation and operation of the pen-trap unobtrusively and with minimum disruption of normal service. Any entity providing such assistance shall be reasonably compensated by the DEA, pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of the warrant.

10.      **Through this application, the United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).**

## AGENT BACKGROUND

11.      I am employed as a Special Agent (SA) with the United States Drug Enforcement Administration (DEA), and have been so employed since June 2019. I am currently assigned to the Seattle Field Division. In this capacity, I investigate violations of the Controlled Substance Act, Title 21, United States Code, Section 801 et seq., and related offenses. I have received specialized training in the enforcement and investigation of the Controlled Substance Act. I have received over 620 hours of classroom training including, but not limited to, drug identification, drug interdiction, detection, money laundering techniques and schemes, smuggling, and the investigation of individuals and/or organizations involved in the illegal possession, possession for sale, sales,

Affidavit of SA Williams - 3
USAO 2019R00179 (TT43)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

importation, smuggling, cultivation, manufacturing, and illicit trafficking of controlled substances. I have participated in investigations of individuals who have smuggled, received and distributed controlled substances, including heroin, cocaine and methamphetamine, as well as the seizure of illegal drugs and proceeds of the sale of those illegal drugs.

12.     In my role as a Special Agent for the Drug Enforcement Administration, I have participated in investigations of individuals who have smuggled, received and distributed controlled substances, including heroin, cocaine and methamphetamine, as well as the seizure of illegal drugs and proceeds of the sale of those illegal drugs. Additionally, I have participated in an investigation involving the interception of wire and electronic communications and I am familiar with the ways in which drug traffickers conduct their business, including, but not limited to, their methods of importing and distributing drugs, their use of cellular telephones, and their use of numerical codes and code words to conduct their illegal transactions.

13.     In writing this affidavit, I specifically consulted with DEA Special Agent Kevin Palermo, who is the lead agent for the case for which this affidavit is written. Agent Palermo has managed and been involved in this investigation since its commencement in December 2018. Agent Palermo has been employed as an agent for the DEA since August 2016. During his employment, Agent Palermo has also worked on drug investigations involving the use of court-authorized wiretaps under Title III. In that capacity, Agent Palermo has monitored, listened to, and reviewed transcripts and line sheets both in English and Spanish (prepared by linguists) documenting the content of hundreds of intercepted conversations involving the trafficking of cocaine, methamphetamine, heroin, and other narcotics, by persons who used some form of code to thwart law enforcement. Prior to his employment as a DEA Agent, Agent Palermo was employed as a police officer in the Village of Lincolnshire in Lake County, Illinois, from December 2014 to August 2016. In that capacity, Agent Palermo was responsible for

Affidavit of SA Williams - 4
USAO 2019R00179 (TT43)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

providing and promoting public safety in the Village of Lincolnshire and the State of Illinois.

## SUMMARY OF INVESTIGATION

14.     Beginning in December 2018, DEA, Snohomish Regional Drug Task Force (SRDTF), Skagit County Drug Task Force (SCDTF), and Seattle Police Department Narcotics (SPD) began investigating a drug trafficking organization (DTO) operating within the Western District of Washington. Through the use of confidential source information and traditional investigative techniques, agents identified several individuals operating as part of the Jimenez-Hernandez TCO and Peinado TCO involved in the distribution of methamphetamine, heroin, and counterfeit oxycodone, commonly referred to as M30s.

### Authorization to Intercept Wire and Electronic Communications

15.     Agents previously executed a sworn affidavit in support of an application for an order authorizing the interception of wire and electronic communications over TT3, TT4, and TT6 in this investigation. That application was granted by the Honorable James L. Robart, United States District Judge. That prior affidavit was sworn, signed and filed on October 15, 2019, under this same case number. Interception of TT3, TT4, and TT6 began on or about October 15, 2019, and expired per the terms of the Court's order on or about November 14, 2019.

16.     Agents previously executed a sworn affidavit in support of an application for an order authorizing continued interception of wire and electronic communications of TT3, and TT4, the initial interception of wire and electronic communications of TT17, TT22, and TT24[1]; and the initial interception of wire communications only of TT16, in this investigation. That application was granted by the Honorable Ricardo S. Martinez, United States District Judge. That prior affidavit was sworn, signed and filed on

---

[1] On November 26, 2019, agents obtained a revised wiretap Order from Judge Martinez to correct the area code of TT24 from 206-970-2993 to 425-970-2993. Phone number 206-970-2993 was never intercepted.

Affidavit of SA Williams - 5
USAO 2019R00179 (TT43)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

November 22, under this same case number. Interception of TT3, TT4, TT16, TT17, and TT22 began on or about November 22, 2019, and expired per the terms of the Court's order on or about December 21, 2019.

17.     Agents previously executed a sworn affidavit in support of an application for an order authorizing the interception of wire and electronic communications over TT24 in this same investigation. That application was granted by the Honorable Ricardo S. Martinez, United States District Judge. That prior affidavit was sworn, signed and filed on November 26, 2019, under this same case number. Interception of TT24 began on or about November 26, 2019, and expired per the terms of the Court's order on or about December 21, 2019.

18.     Agents executed a sworn affidavit in support of an application for an order authorizing the interception of wire and electronic communications over TT40 in this same investigation. That application was granted by the Honorable Ricardo S. Martinez, United States District Judge. That prior affidavit was sworn, signed and filed on April 9, 2020, under this same case number. Interception of TT40 began on or about April 10, 2020 and is ongoing.

## PROBABLE CAUSE

April 27, 2020 Phone Call Between **TT43** and Laura Rodriguez Moreno (TT40).

19.     On April 27, 2020, at approximately 11:39am, investigators intercepted a suspected drug related phone call between **TT43** and TT40. During the phone call, investigators suspect **TT43** and TT40 to have discussed drug (specifically methamphetamine) availability and prices.  The following is a summary of the transcribed call (session 504), which occurred in Spanish, and translated into English by professional Spanish-speaking linguists contracted by the DEA:

| | |
|---|---|
| TT40: | Hello! |
| **TT43**: | Ma'am! |
| TT40: | Yes? |
| **TT43**: | Do, your friends from Los Angeles have any "water" [Methamphetamine]. |

| | | |
|---|---|---|
| 1 | TT40: | Uh no…not right now. |
| 2 | **TT43** | It's all going to hell, right? |
| 3 4 5 | TT40: | It's all…uh-huh. Yeah, I already called three of them [drug couriers/ sources of supply] and none of them have anything right now. One was supposed to just now cross it. We shall see what happens. [Cross the border with narcotics] |
| 6 | **TT43**: | Yeah, it's all fucked up. |
| 7 | TT40: | Yeah, there isn't anything |
| 8 | *Discussion about the restaurant.* | |
| 9 | **TT43**: | That's good. I'm looking into that shit, I can't find any at all. [Looking into finding narcotics and can't find any] |
| 10 | TT40: | Really? Yeah, there isn't any right now |
| 11 12 | **TT43**: | And what there is available, they want to give it for one thousand eight-hundred. [$1800 per pound of methamphetamine] |
| 13 | TT40: | Over there?  Yeah. |
| 14 | **TT43**: | Yeah, it's expensive over here. |
| 15 | TT40: | That's because there isn't any, so they want to take advantage of that. They want to raise it up to more than three. |
| 16 | [Voices overlap] | |
| 17 | **TT43**: [ | Coughs] Right. |
| 18 19 | TT40: | So we could get out for more than three. That's what they want. That's why… |
| 20 | [Voices overlap] | |
| 21 | **TT43**: | But the people over here don't want to pay, mam. |
| 22 | TT40: | That's right, they don't want to, that's the problem. |
| 23 | **TT43**: | That's the issue, the people who are able to, won't pay that over here. |
| 24 25 | TT40: | Uh-huh, that's right. Yeah, either way, they have to see that if they are being given that at a higher cost…and, and if there isn't any, the prices have to go up, otherwise what's the fucking point. |
| 26 | **TT43**: | Yeah, for sure. |
| 27 | TT40: | Um-hum. |
| 28 | **TT43**: | Alright, I will come over to you later or tomorrow, man. |

Affidavit of SA Williams - 7
USAO 2019R00179 (TT43)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | | |
|---|---|---|
| 1 | TT40: | Alright, because we close at three [3:00pm] today. |
| 2 | **TT43**: | Okay, so tomorrow then. |
| 3 | TT40: | Yeah. |
| 4 | **TT43**: | I'm, I'm in Seattle right now. |
| 5 | TT40: | Oh, man! Alright, okay. |
| 6 | **TT43**: | Yeah. |
| 7 | TT40: | If I know of anyone, I will let you know, but I really don't think that right now, because I already, I already called the three who have some, and none of them… |
| 8 | | |
| 9 | **TT43**: | Alright. |
| 10 | TT40: | Um-hum. |
| 11 | **TT43**: | I'm going to keep looking around, to see if I find any [narcotics] |
| 12 | TT40: | Yeah, hopefully they arrive. |
| 13 | **TT43**: | I, I… I will keep you posted as well, to see what's up. |
| 14 | TT40: | Alright. Okay. |
| 15 | **TT43**: | Does my pops want to go or what? [Jose Morales Flores] |
| 16 | TT40: | Well, he's looking into that, he's looking around to see who may have some, so he could take off. He is in his own world. He wanted to leave since the day before yesterday, and I told him to wait, but he's not listening. |
| 17 | | |
| 18 | **TT43**: | If, if he finds some, tell him to let me know so I can go with him. |
| 19 | TT40: | Yes, if he finds some, for sure. He will probably take off quickly because there's not… They keep asking for it and there isn't anything. [take off to pick up narcotics because there isn't any] |
| 20 | | |
| 21 | **TT43**: | Alright. I'm going to try to keep chasing them. |
| 22 | TT40: | Yup. |
| 23 | **TT43**: | Honestly, I'm cashing, so I can get them for one-four hundred. [$1400] |
| 24 | | |
| 25 | TT40: | It's just that, that the last time he got them, he got them for one thousand three-hundred.[$1300] |
| 26 | | |
| 27 | **TT43**: | Yeah, but I don't think we will be able to find those prices. |
| 28 | TT40: | Well, right now… there won't be any for that price right now, but there will be some for one thousand five-hundred and higher. |

|  | | But I don't think he can get any for lower than one thousand five-hundred, for sure. |
| **TT43**: | | Like I said, there are some for one thousand eight-hundre. There are some, but at one thousand eight-hundred. |
| TT40: | | Yes, there are some. At the very least at one thousand five-hundred. |
| **TT43**: | | Yup. I am, I am going to keep looking around and I will throw some at you. I will let you know. |
| TT40: | | Okay, sounds good. |
| **TT43**: | | Alright then. |
| TT40: | | Yeah, bye. |

20.     Based on my training and experience, and my discussions with other experienced officers and agents involved in drug investigations, I believe **TT43** and TT40 were discussing the current market price and availability of methamphetamine. When **TT43** asked if TT40's friends from Los Angeles had any "water" he was using coded terminology for methamphetamine, which investigators suspect drug traffickers commonly use to avoid law enforcement detection. When **TT43** states that "it's all going to hell, right", I believe he is referring to the current state of the drug market and the effect COVID-19 has had on the supply and demand of narcotics, specifically methamphetamine. TT40 subsequently responded that she already called three of them [couriers/sources of supply] and that none of them currently had anything. Additionally, she stated that one (of the aforementioned three unknown drug suppliers) was supposed cross it. I believe in TT40 statements, she is telling **TT43** that she had already contacted three drug sources of supply and discovered that none of them had any narcotics. Additionally, I believe when she states that "one was supposed to cross it" she was referring to a drug redistributor that is crossing the US-Mexican border to deliver narcotics.

21.     Later in the conversation, **TT43** states that he is looking into that shit and that he can't find any [narcotics] to which TT40 responds in agreement that there isn't any [narcotics] right now. **TT43** subsequently tells TT40 that what there is available, they

Affidavit of SA Williams - 9
USAO 2019R00179 (TT43)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

want to give it for one thousand eight-hundred [US currency] to which TT40 replies with "over there, yeah".  I believe **TT43** is telling TT40 that the narcotics that are available in Mexico are being sold at a higher than usual price due to the lack of supply of in the US. TT40 then tells **TT43** that "they" [drug redistributors in Mexico] want to take advantage of that and that they want to raise it up to more than "three" [drug price]. I believe TT40 is telling **TT43** that the drug redistributors in Mexico are capitalizing on the low drug supply in the US and that they are raising the price of the narcotics in order to make more money. Later In the conversation, **TT43** states that he was going around right now, to see if he [can] find any and that he would keep TT40 posted [on the availability of narcotics]. **TT43** asks TT40 if his "pops" wants to go or what, I believe pops to be Jose Morales Flores. TT40 responded that pops is looking into it and that he is looking around to see who may have some, and that he could take off [to go get narcotics]. TT40 further explains that pops wanted to leave since the day before yesterday. **TT43** asked TT40 that if pops found some to let **TT43** know so that he could go with pops. I believe when **TT43** states that he is "going around to see if he can find any" he expressing that he is trying to contact other redistributors besides TT40 in order to resupply on narcotics. Furthermore, I believe TT40 is telling **TT43** that pops is also attempting to purchase/resupply narcotics. I believe **TT43** acknowledges this and expressed to TT40 that he wanted to accompany pops in finding narcotics. Following additional drug related conversation, **TT43** states that he would keep looking and that he would throw some [narcotics] at TT40.  I believe **TT43** is reiterating that he will continue to search for narcotics and that when he finds narcotics he would provide some to TT40.

<u>April 27, 2020 SMS Text Messages and Subsequent Phone Call Between **TT43** and Laura Rodriguez Moreno (TT40)</u>

22.    On April 27, 2020, approximately occurring between 3:11pm and 3:13pm, investigators intercepted SMS text and phone activity between **TT43** and TT40. Shortly after the messages, a phone conversation ensued which investigators suspect to be a drug related discussion. The following is a summary of the text messages (sessions 510 and

Affidavit of SA Williams - 10
USAO 2019R00179 (TT43)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

511) and subsequent phone call (session 512), which occurred in Spanish, and translated into English by professional Spanish-speaking linguists contracted by the DEA:

*Text Messages*

**TT43**:   Call me when you have the time

TT40:   Ok

*Beginning of phone call*

TT40:   Hello.

**TT43**:   Ma'am?

TT40:   What's up?

**TT43**:   I got some at five [drug price].

TT40:   At five or at one-fifty?

**TT43**:   It was at one thousand five-hundred.

TT40:   Right on.

**TT43**:   Well, well, they wanted to give it to mat at one thousand nine-hundred. I have the messages here.

TT40:   Yeah. I was told that at one thousand… at two thousand two-hundred and the cheapest one at two thousand.

**TT43**:   Well, I got some here at one thousand five-hundred.

TT40:   Really? Where?

**TT43**:   Down there…

[Voices overlap]

TT40:   All the way down there.

**TT43**:   …there in Los Angeles.

TT40:   And by when?

**TT43**:   As soon as we're ready.

TT40:   When they give the go ahead.

**TT43**:   Yes.

TT40:   Let me tell, uh…

[Voices overlap]

**TT43**:   I'm, I'm going…

| | | |
|---|---|---|
| TT40: | … your pops. | |
| **TT43**: | I'm coming over tomorrow anyway. I will call you tomorrow. | |
| TT40: | Okay. | |
| **TT43**: | So we don't talk over the phone. | |
| TT40: | Yes, that's better. | |
| **TT43**: | Tomorrow I will come over to the food. | |
| TT40: | Alright. | |
| **TT43**: | Alright. | |
| TT40: | Alright, bye. [Background: noise] | |

23.     Based on my training and experience, and my discussions with other experienced officers and agents involved in drug investigations, I believe that the conversation between **TT43** and TT40 is a continuation of a phone call that occurred earlier that day (session 504). I believe **TT43** is discussing the price of narcotics that he found available at a reasonable price in Los Angles. Following further discussion regarding drug pricing, I believe when **TT43** states that he would be coming over tomorrow so that they "don't talk over the phone", **TT43** is attempting to avoid alerting law enforcement of their drug trafficking activities.  Furthermore, when **TT43** states he would "come over to the food"; I believe he is referring to the Fuente De Café[2].

### BACKGROUND INFORMATION CONCERNING CELLPHONES

24.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network

---

[2]  The Fuente De Café is a restaurant owned by Laura RODRIGUEZ MORENO. Investigators have previously conducted controlled purchases at the Fuente De Café through confidential sources. Additionally, investigators suspect the restaurant has been used to store narcotics.

Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers -- as transmitted from a cellular device to a cellular antenna or tower -- can be recorded by pen-traps and indicate the identity of the cellular device making the communication without revealing the communication's content.  The IMSI number for the **Target Telephone** is set forth above.

25.    Based on my training and experience, I know that when a cell phone connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower, and the cellular antenna or tower records those identifiers as a matter of course.  The unique identifiers -- as transmitted from a cell phone to a cellular antenna or tower -- are like the telephone number of an incoming call.  They can be recorded by pen-trap devices and indicate the identity of the cell phone device making the communication without revealing the communication's content.  In addition, a list of incoming and outgoing telephone numbers is generated when a cell phone is used to make or receive calls, or to send or receive text messages (which may include photographs, videos, and other data). These telephone numbers can be recorded by pen-trap devices and then used to identify the parties to a communication without revealing the communication's contents.

26.    Based my training and experience, I know that a cell phone can also be used to exchange text messages with email accounts.  The email addresses associated with those text messages can be recorded by pen-trap devices and then used to identify parties to a communication without revealing the communication's contents.

27.    Based on my training and experience, I know that cellular phones can connect to the internet via a cellular network.  When connecting through a cellular network, internet communications sent and received by the cellular phone each contain the same unique identifier that identifies cellular voice communications, such as an ESN, MEIN, MIN, SIM, IMSI, MSISDN, or IMEI.  Internet communications from a cellular phone also contain the IP address associated with that cellular phone at the time of the

Affidavit of SA Williams - 13
USAO 2019R00179 (TT43)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

communication. Each of these unique identifiers can be used to identify parties to a communication without revealing the communication's contents.

28.     In my training and experience, I have learned that the wireless provider listed in Attachment A is a company that provides cellular telephone access to the general public. I also know that certain providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data (also known as GPS data or latitude-longitude data) and cell-site data (also known as "tower/face information" or cell tower/sector records). E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the cell towers (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

29.     Based on my training and experience, I know that the wireless provider listed in Attachment A can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the wireless provider's network or with such other reference points as may be reasonably available.

30.     When using a cellular connection to receive or transmit data, a cellular phone typically utilizes a cell tower to make telephone calls, send or receive text messages, send or receive emails, surf the internet, carry out application initiated data transfers, among other things.

Affidavit of SA Williams - 14
USAO 2019R00179 (TT43)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

31.     Based on my training and experience, I know that the wireless provider listed in Attachment A can collect cell-site data about the target telephone.  Based on my training and experience, I know that for each communication (including data connections) a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication.  I also know that wireless providers, such as the wireless provider listed in Attachment A typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

32.     Different service providers use different systems, applications, and reports to collect or analyze cell site data.  These systems, applications, and reports are referred to by a variety of names including, but not limited to real-time tool or "RTT" (Verizon), Periodic Location Updates or "PLU" (Verizon), per call measurement data or "PCMD" (Sprint), Network Event Location System or "NELOS" (AT&T), EVDO, ALULTE, Timing Advance, and TruCall.  RTT data, for example, estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower.  This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

33.     Based on my training and experience, I know that wireless providers, such as the wireless provider listed in Attachment A, typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service.  I also know that wireless providers, such as the wireless provider listed in Attachment A, typically collect and retain information about

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phone's user or users and may assist in the identification of co-conspirators.

34.     Modern cell phones allow users to switch their telephone numbers, use multiple telephone numbers on a single device, and transfer their telephone number to a different cell phone. These changes can be made with the assistance of the wireless provider or by taking actions such as changing the "SIM card" (short for "subscriber identity module card") of a cellphone. To provide for any such changes made to the Target Cell Phone, Attachment A specifies that the property to be searched includes: (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone numbers listed above, within the period of disclosure authorized by this warrant.

## AUTHORIZATION REQUEST

35.     Based on the foregoing, I request that the Court issue the proposed search warrant and pen-trap order, pursuant to Federal Rule of Criminal Procedure 41, 18 U.S.C. § 2703(c), and  18 U.S.C. § 3123.

Affidavit of SA Williams - 16
USAO 2019R00179 (TT43)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

36.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice to the subscriber or user of the Target Telephones until 30 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

37.     I further request that the Court direct the wireless provider listed in Attachment A to disclose to the government any information described in Attachment B that is within the possession, custody, or control of.  I also request that the Court direct the wireless provider listed in Attachment A to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the wireless provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the wireless provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The agency shall reasonably compensate the wireless provider listed in Attachment A for reasonable expenses incurred in furnishing such facilities or assistance.

Affidavit of SA Williams - 17
USAO 2019R00179 (TT43)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

38.     Pursuant to 18 U.S.C. § 2703(g), the government will execute this warrant by serving the warrant on the wireless provider listed in Attachment A.  Because the warrant will be served on the wireless provider listed in Attachment A who will then compile the requested records and data, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.  I therefore request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

Kailund Williams
Special Agent
Drug Enforcement Administration


The above-named agent provided a sworn statement to the truth of the foregoing affidavit by telephone on 28nd day of April 2020.

BRIAN A. TSUCHIDA
United States Magistrate Judge

Affidavit of SA Williams - 18
USAO 2019R00179 (TT43)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**EXHIBIT 1**

2

3

<u>DECLARATION</u>

4

I, Stephen Hobbs, declare as follows:

5

     1.     I am a duly appointed Assistant United States Attorney for the Western

6

District of Washington, and I have primary responsibility for representing the interests of

7

the United States herein.

8

     2.     I make this declaration in support of an application for a search warrant

9

pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) with

10

an integrated pen-trap order pursuant to 18 U.S.C. §§ 3122 and 3123.  Pursuant to 18

11

U.S.C. § 3122(a)(1), I am the applicant for purposes of the pen-trap portion of the

12

requested warrant and order.

13

     3.     Pursuant to 18 U.S.C. § 3122(b), I certify that the DEA is the law

14

enforcement agency conducting the investigation in this matter and that the information

15

likely to be obtained from the requested warrant is relevant to an ongoing criminal

16

investigation being conducted by that agency.

17

     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

18

Application is made on the basis of information officially furnished, and on that basis I

19

verily believe such information to be true.

20

     Executed this 28th day of April 2020.

21

22

                                           /s/ *Stephen Hobbs*

23

                                         Stephen Hobbs
                                         Assistant United States Attorney

24

25

26

27

28

EXHIBIT 1 -- PAGE 1
USAO 2019R00179 (TT43)

## ATTACHMENT A

### Property to Be Searched and Subscriber/Subject Information

1.      Records and information associated with the cellular phone:

a.      **Target Telephone 43**, assigned call number **425-249-1423** with International Mobile Subscriber Identity (IMSI) 310150728434109.  **TT43** has a listed subscriber of "Victor Mendez" and has service provided by AT&T/Cricket Wireless, a wireless telephone service provider headquartered at AT&T Corporation, 11760 U.S. Highway 1, North Palm Beach, Florida 33408, and/or Cricket Wireless LLC, 1025 Lenox Park Boulevard Northeast, Atlanta, Georgia 30319.

2.      The property to be searched includes:  (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone numbers listed above, within the period of disclosure authorized by this warrant.

3.      "AT&T/Cricket Wireless" is identified in Attachment B as the **"Wireless Provider."**

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ATTACHMENT B**

**Particular Things to be Seized**

This warrant is issued pursuant to Rule 41 of the Federal Rules of Criminal Procedure, the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, and the Pen Register Act, 18 U.S.C. §§ 3121-3127.  As such, this warrant authorizes the collection of subscriber records, pen-trap data, and cell site data information regarding the Target Cell Phone.  **This warrant does not authorize the disclosure or seizure of any tangible property or the content of any wire or electronic communication, as defined in 18 U.S.C. § 2510(8).**  Accordingly, the Court finds reasonable necessity for the seizure of the data and records identified below.  *See* 18 U.S.C. § 3103a(b)(2).

**I.     Section I:  Information to be Disclosed by Wireless Providers**

1.     **Subscriber/Account Information.**  The following non-content information about the customers or subscribers associated with the Account listed in Attachment A:

a.     Names (including subscriber names, user names, and screen names);

b.     Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

c.     Local and long distance telephone connection records for 60 days prior to April 28, 2020;

d.     Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions for 60 days prior to April 28, 2020;

e.     Length of service (including start date) and types of service utilized;

f.     Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"),

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital

Network Numbers ("MSISDN"), International Mobile Subscriber Identity Identifiers

("IMSI"), or International Mobile Equipment Identities ("IMEI");

g.     Other subscriber numbers or identities (including the registration

Internet Protocol ("IP") address); and

h.     Means and source of payment for such service (including any credit

card or bank account number) and billing records.

2.     **Pen Register/ Trap and Trace Data and Associated Subscriber Records to Be Provided for a Period of <u>45 days from April 28, 2020.</u>**

a.     The Wireless Provider shall install and monitor pen-trap devices to

record, decode, and/or capture dialing, routing, addressing, and signaling information

associated with each communication to or from the Target Cell Phone including the date,

time, and duration of the communication, and the following, without geographic limit and

without notice to the subscriber:

(i)     IP addresses associated with the cell phone device or devices used to send or
receive electronic communications;

(ii)    Any unique identifiers associated with the cell phone device or devices used
to make and receive calls with the cell phone number described in
Attachment A or to send or receive other electronic communications,
including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

(iii)   IP addresses of any websites or other servers to which the cell phone device
or devices connected; and

(iv)    Source and destination telephone numbers and email addresses.

b.     On a 24-hour-a-day basis, for the duration of the authorized pen-trap

devices, the Wireless Provider shall provide the following records for those subscribers

whose identifiers are obtained pursuant to the use of the pen-trap devices:  published or

non-published subscriber names and addresses, including billing addresses.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

3.      **Historical Cell Cite Location Information.**

a.      All records and other information (**<u>not</u> including the contents of communications**) relating to wire and electronic communications sent or received by the Account from **March 1, 2020, through April 28, 2020**, including:

i.      the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii.      historical cell site information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.  This information is to be provided irrespective of the application, name, or report utilized by the Wireless Provider.  Accordingly, this information includes the following data sets to the extent that they are collected by the Wireless Providers:  RTT, PLU, PCMD, NELOS, EVDO, TruCall, ALULTE, and Timing Advance.

b.      The physical address and coverage maps of cell towers used by the Target Cellular Phones.

4.      **Prospective Cell Site Location Information.**

a.      All information about the location of the Target Cell Phones described in Attachment A for **a period of 45 days from April 28, 2020,** during all times of day and night.  This information includes: precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone(s) or account(s) described in Attachment A.

b.      The physical address and coverage maps of cell towers used by the Target Cell Phone.

5.      **Prospective E-911/GPS and Cell Site Triangulation Information.**

a.      All information about the location of the Target Cell Phones described in Attachment A for **a period of 45 days from April 28, 2020,** during all times of day and night.  This information includes: all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about

which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone(s) or account(s) described in Attachment A.

        b.    The physical address and coverage maps of cell towers used by the Target Cellular Phones.

To the extent that the location information described in the previous paragraphs (hereinafter, "Location Information") is within the possession, custody, or control of the Wireless Providers, the Wireless Providers are required to disclose the Location Information to the government pursuant to this warrant.  In addition, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), The Wireless Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Wireless Provider's services.  The government shall compensate the Wireless Providers for reasonable expenses incurred in furnishing such facilities or assistance.

## II.    **Section II:  Information to Be Seized by the Government**

1.    All information described above in Section I that constitutes evidence of violations of Distribution of Controlled Substances, in violation of 21 U.S.C. § 841(a)(1), and/or conspiracy to commit that same offense in violation of 21 U.S.C. § 846 involving the Jimenez-Hernandez TCO and Peinado TCO

2.    All non-content subscriber/account information provided pursuant to 18 U.S.C. § 2703(c).

3.    All non-content dialing, routing, addressing, and signaling information provided pursuant to 18 U.S.C. §§ 3121-3127.

4.    Location Information regarding the Target Cellular Phones.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency

ATTACHMENT B
USAO 2019R00179 (TT43)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  personnel assisting the government in this investigation, and outside technical experts
2  under government control) are authorized to review the records produced by the Wireless
3  Providers in order to locate the things particularly described in this Warrant.
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ATTACHMENT B
USAO 2019R00179 (TT43)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970